**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

ALBERTO BONILLA-CASTRO,

      Plaintiff,

  -vs-                                                  Case No. 07-C-821

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

      Defendant.

---

## DECISION AND ORDER

---

### NATURE OF CASE

The plaintiff, Alberto Bonilla-Castro ("Bonilla-Castro"), commenced this action on September 12, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), pursuant to 42 U.S.C. § 405(g), denying his application for disability insurance benefits under Title II of the Social Security Act. Bonilla-Castro's appeal will be addressed herein.

## PROCEDURAL HISTORY

On July 8, 2004, Bonilla-Castro filed an application for disability insurance benefits, alleging that he became disabled beginning July 15, 2000, due to a herniated disc.[1] (Tr. 24, 61-3, 66.) Bonilla-Castro's application was denied initially and upon reconsideration. (Tr. 23-24.) Pursuant to Bonilla-Castro's request, a hearing was held before ALJ Margaret J. O'Grady on February 1, 2007. (Tr. 352-80.) Bonilla-Castro, who was represented by counsel, appeared and testified. A vocational expert also testified at the hearing.

In an April 27, 2007 Decision, the ALJ determined that Bonilla-Castro has depression, anxiety, psychosis, chronic back pain, degenerative disc disease, fibromyalgia[2], left knee pain, gastrointestinal bleed, gastritis and Mallory-Weiss tear[3] but that Bonilla-Castro does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] By way of brief background, Bonilla-Castro filed a prior application for disability insurance benefits which was denied by an administrative law judge ("ALJ") on May 20, 2002. (Tr. 73.) This decision is binding on Bonilla-Castro because he did not seek review of the claim by the Appeals Council. *See* 20 C.F.R. § 404.955. Bonilla-Castro changed his onset date to May 21, 2002. (Tr. 15, 356.) In addition, Bonilla-Castro's insured status for the purpose of establishing entitlement to disability insurance benefits expired on December 31, 2005. (Tr. 54.) *See* 20 C.F.R. § 404.101(a) (to be eligible for disability insurance benefits, a claimant must have sufficient "quarters of coverage" to be "fully insured"); 20 C.F.R. § 404.130(b); 20 C.F.R. § 404.131 (to be entitled to disability insurance benefits, a claimant must show that he was disabled on or before the date his insured status expired). Bonilla-Castro acknowledges he must demonstrate that he became disabled prior to the December 31, 2005 expiration of his insured status. (Pl.'s Br. at 1.)

[2] Fibromyalgia is a common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue and sleep disturbances; the cause is unknown. *Stedman's Medical Dictionary* 725 (28th ed. 2006).

[3] Mallory-Weiss tear or syndrome is an upper gastrointestinal hemorrhage resulting from a laceration in the mucosa at the gastroesophageal junction, usually induced by retching or vomiting. *Stedman's Medical Dictionary* 1904 (28th ed. 2006).

impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). (Tr. 17.) The ALJ found that Bonilla-Castro retained the residual functional capacity to perform unskilled, routine, simple work at the light exertional level allowing for alternating between sitting and standing and involving only occasional stooping, crouching, bending and twisting. (Tr. 19.) The ALJ further found that Bonilla-Castro could perform a significant number of jobs that exist in the national economy such as assembler, production worker and inspector. (Tr. 21.) Therefore, the ALJ concluded that Bonilla-Castro was not under a "disability" as defined in the Social Security Act. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Bonilla-Castro's request for review. (Tr. 4-6.)

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment which exists in the national economy considering his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is so disabled, the ALJ is required to evaluate in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether his impairment meets or equals one of the impairments listed in

20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), which the Commissioner acknowledges to be conclusively disabling; (4) whether the claimant possesses the residual functional capacity to perform his past relevant work; and (5) whether the claimant is capable of performing any other work existing in significant numbers in the national economy given his age, education, and work experience. *See Clifford v. Apfel*, 277 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Wolfe v. Shalala*, 997 F.2d 321, 322-3 (7th Cir. 1993). If a claimant satisfies steps one, two and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then he must demonstrate that he lacks the residual functional capacity to perform his past work. The claimant bears the burden at steps one through four. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Id.* at 352; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Knight*, 55 F.3d at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

Review of the Commissioner's decision is limited. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the finding of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford*, 227 F.3d at 869. Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

This Court reviews the entire administrative record but does not reconsider facts, reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869. Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2002). However, even if substantial evidence supports the Commissioner's findings, this Court may reverse if the ALJ committed an error of law. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

**ANALYSIS**

In this case, the ALJ conducted the standard five-step evaluation to determine whether Bonilla-Castro is disabled and denied Bonilla-Castro's claim at step five. On appeal, Bonilla-Castro asserts several challenges to the ALJ's decision and contends that the ALJ committed legal errors in evaluating the opinions of Bonilla-Castro's treating physicians and the consultative psychologist. Bonilla-Castro also asserts that the ALJ's conclusion regarding

Bonilla-Castro's mental impairments is not supported by substantial evidence. Bonilla-Castro also argues that the ALJ's residual functional capacity analysis is flawed. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be upheld.

**1.      Whether the ALJ Properly Evaluated the Medical Evidence.**

Bonilla-Castro asserts that the ALJ failed to properly evaluate the medical evidence and erred by rejecting the opinions of Bonilla-Castro's treating physicians. To the contrary, the Commissioner asserts that the medical evidence documents Bonilla-Castro's improvement and, therefore, the ALJ reasonably found that Bonilla-Castro could sustain light work over an eight-hour work day.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by the medical findings and consistent with other substantial evidence in the record. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *Clifford*, 227 F.3d at 870; *see also,* 20 C.F.R. § 404.1527(d)(2); SSR 96-8p. "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c); *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)). The ALJ "must articulate, at some minimum level, her analysis of the evidence." *Dixon*, 270 F.3d at 1176 (citing *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)). The ALJ is not required to address every piece of evidence or testimony, but the ALJ must provide "some glimpse into her reasoning." *Id.* (*citing Zurawski*, 245 F.3d at 889). The ALJ may discount a treating doctor's medical opinion

- 6 -

if it is inconsistent with the opinion of a consulting physician or if it is internally inconsistent, as long as she "minimally articulates [her] reasons for crediting or rejecting evidence of disability." *Skarbek*, 390 F.3d at 503 (quoting *Clifford*, 227 F.3d at 870).

Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In any event, a treating physician's statement that the plaintiff is disabled cannot itself be conclusive; the ultimate determination of whether a claimant is disabled is "reserved for the Commissioner." See 20 C.F.R. § 404. 1527(e)(1); *see also Dixon*, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." (internal citations omitted)).

As previously discussed, Bonilla-Castro's date last insured is December 31, 2005, which means that Bonilla-Castro must demonstrate that he became disabled prior to his expiration of insured status. (Tr. 74.) In this case, Bonilla-Castro was fifty years old when the ALJ issued her decision. (Tr. 61.) Bonilla-Castro is literate in Spanish and his hearing testimony was provided with the assistance of a Spanish language interpreter. (Tr. 354.) He has a Spanish language general equivalency diploma ("G.E.D.") and worked in the past as an airport baggage handler. (Tr. 357, 367.) Bonilla-Castro's impairments include chronic low back and bilateral leg pain; fibromyalgia; chronic fatigue syndrome and depression. (Tr. 17-8.)

The medical evidence for the period before Bonilla-Castro's insured status expired is as follows. In July and August of 2003, Bonilla-Castro received treatment for gastritis, gastrointestinal bleeding and Mallory-Weiss tear. (Tr. 135-51.) On September 23, 2004, Steve Kim, M.D., ("Kim") completed a "Fibromyalgia Syndrome Medical Assessment Form." (Tr. 156-61.) Kim indicated that began treating Bonilla-Castro on May 14, 1999, and that he exhibited the diagnostic criteria for fibromyalgia, which included the presence of multiple tender points. (Tr. 156.) Bonilla-Castro's symptoms included chronic pain, non-restorative sleep, muscle weakness, morning stiffness, frequent, severe headaches, numbness and tingling/paresthesia, anxiety/panic attacks and depression. (Tr. 156.) Kim opined that Bonilla-Castro frequently experienced symptoms that interfered with his attention and concentration to perform simple work tasks. (Tr. 157.) Kim further opined that Bonilla-Castro would be unable to deal with public contact, strict deadlines, close interaction with coworkers/supervisors or exposure to work hazards or perform routine, repetitive tasks at a consistent pace, detailed or complicated tasks or fast-paced tasks. (Tr. 158.) Kim estimated that Bonilla-Castro could sit 30 minutes without interruption and that Bonilla-Castro could not sit or stand/walk two hours total in an eight-hour work day. (Tr. 158.) Kim opined that Bonilla-Castro could not lift more than ten pounds. (Tr. 159.) He indicated that Bonilla-Castro could use his upper extremities for reaching and gross and fine manipulations only twenty percent of an eight-hour work day. (Tr. 160.)

Kim also stated that Bonilla-Castro had a limited but satisfactory ability to understand, remember and carry out very short and simple instructions and maintain attention for simple

repetitive tasks. (Tr. 161.) He stated that Bonilla-Castro was "seriously" limited in his ability to interact appropriately with the general public; work in coordination with or proximity to others without being unduly distracted or distracting; perform routine, repetitive work at a consistent pace without an unreasonable number of rest periods; be aware of normal hazards and take appropriate precautions; and respond appropriately to changes in a routine work setting. (Tr. 161.) Kim opined that Bonilla-Castro was unable to complete a normal work day and work week without interruption from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; deal with normal work stress of routine, repetitive, low-stress jobs; or deal with the stress of semi-skilled and skilled work. (Tr. 161.)

On October 5, 2004, Dr. Cully White ("White") completed a Lumbrosacral Spine Impairment Medical Assessment Form. (Tr. 163-66.) White stated that Bonilla-Castro experienced "moderate" pain and that he "rarely" experienced symptoms which interfered with his ability to maintain attention and concentration needed to perform simple works tasks during a typical work day. (Tr. 163.) He stated that Bonilla-Castro could not perform routine repetitive tasks at a consistent pace, detailed or complicated tasks, or fast-paced tasks. (Tr. 164.) He opined that Bonilla-Castro would be "totally disabled" until he recovered from pending surgery. (Tr. 165.)

On October 26, 2004, Bonilla-Castro underwent lumbar laminectomies and fusions at levels L2-L5 with rods, bolts and bone grafts from his hip placed along and between the discs of his spine. (Tr. 168, 170-72.) A November 2004 follow-up examination showed that Bonilla-Castro's condition "significantly improved" and Bonilla-Castro stated that he was "doing

- 9 -

Case 2:07-cv-00821-RTR   Filed 09/09/08   Page 9 of 20   Document 16

extremely well." (Tr. 204.) Bonilla-Castro walked with a steady gait, retained full strength and normal sensory function and reflexes. (Tr. 204.) White noted that Bonilla-Castro continued to make an "excellent" recovery and instructed him to increase his activities as tolerated with a new weight restriction of twenty pounds. (Tr. 205.)

In January 2005, Bonilla-Castro saw White for a follow-up examination. White's treatment notes document that Bonilla-Castro "does continue to report some residual numbness in the left leg, although his LLE (lower left extremity) is otherwise significantly improved." (Tr. 202.) White noted that Bonilla-Castro's residual low back discomfort is gradually improving on a weekly to monthly basis. (Tr. 202.) White further noted that Bonilla-Castro "has been increasing his activities as tolerated and did actually take a vacation to Puerto Rico over the holidays" although he experienced discomfort due to prolonged sitting in the airplane. (Tr. 202.) Bonilla-Castro walked with a steady gait, sat comfortably and had no difficulty changing positions from sitting to standing. (Tr. 202.) White also noted that Bonilla-Castro was alert and oriented with no difficulty with attention span or concentration. (Tr. 202.) In conclusion, White's impression was that Bonilla-Castro continued to make an excellent post-operative recovery. (Tr. 203.)

In January 2005, D. Evan Bestland, Ph.D. ("Bestland") conducted a mental status evaluation of Bonilla-Castro. (Tr. 187-94.) Bestland noted that Bonilla-Castro was able to speak only in Spanish "with very limited knowledge of English" and that Bonilla-Castro's responses to even routine questions were delayed by several seconds. (Tr. 187-88.) Although Bonilla-Castro expressed no problems with depression, Bestland believed Bonilla-Castro was

"markedly depressed" and assigned a Global Assessment Functioning score of 41-50.[4] (Tr. 193.) Bestland diagnosed Bonilla-Castro with pain disorder, "major depressive disorder without psychotic symptoms" and dementia and concluded that he "would appear unable to seek employment at this time based on his physical and psychological condition." (Tr. 193-4.)

In February 2005, Bonilla-Castro reported to White that he continued to have low back, right groin, thigh, calf and neck pain and reported headaches. White observed that Bonilla-Castro "walks into the office with a slow, steady gait, sits comfortably in a chair and fully participates in the examination. He changes from a sitting to a standing position slowly and gains access to the examination table independently." (Tr. 200.) White reported that lumbar spine x-rays demonstrated good alignment and that Bonilla-Castro demonstrated full strength and sensation and normal reflexes. (Tr. 200-1.) He recommended that Bonilla-Castro discontinue wearing his brace and begin physical therapy. (Tr. 201.)

In February 2005, a state agency physician reviewed the medical evidence of record and opined that Bonilla-Castro could lift and carry ten pounds frequently and twenty pounds occasionally and sit and stand/walk about six hours each during an eight-hour work day. (Tr. 232-39.) The physician opined that Bonilla-Castro could frequently climb, balance, kneel, crouch and crawl and occasionally stoop. (Tr. 234.) In July 2005, another state agency physician reviewed the record and concurred with the February 2005 opinion. (Tr. 239.)

---

[4]The Global Assessment of Functioning ("GAF") is a rating of overall psychological functioning. A GAF score of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders* 34 (Am. Psychiatric Ass'n. 4th ed. 2000).

In February 2005, a state agency psychologist, Keith Bauer, Ph.D. ("Bauer"), reviewed the medical evidence of record and evaluated Bonilla-Castro's ability to engage in twenty work-related areas of mental functioning. (Tr. 240-57.) Bauer opined that Bonilla-Castro had moderate limitation in eighteen areas and marked limitations in his ability to understand, remember and carry out detailed instructions. (Tr. 240-41.) Bauer assessed Bonilla-Castro's residual functional capacity and concluded that Bonilla-Castro remained capable of performing unskilled work with normal supervision. (Tr. 242.) In July 2005, another state agency psychologist reviewed the record and concurred with Bauer's opinion. (Tr. 242.)

In March 2005, Bonilla-Castro consulted Edmundo F. Centena, M.D. ("Centena"), a psychiatrist. (Tr. 231.) Bonilla-Castro reported having "profound depression" and Centena noted his sloppy attire and haggard appearance. (Tr. 231.) Centena further noted that Bonilla-Castro exhibited no active suicidal or homicidal ideations and no thought or perceptual disturbances but that immediate recall and concentration were impaired. (Tr. 231.) On March 30, and May 4, 2005, Centena noted that Bonilla-Castro's depression is "improving" but that his mood fluctuates. (Tr. 229-30.) On June 24, 2005, Centena noted that Bonilla-Castro exhibited significant improvement in functioning and is "doing very well" with no obvious thought, perceptual or cognitive disturbances. (Tr. 228.)

Bonilla-Castro also submitted medical evidence after his insured status expired. In March 2006, Centena completed a form stating that Bonilla-Castro had major depressive disorder with psychotic features. (Tr. 259-63.) Dr. Centena indicated that the planitiff had marked restrictions in activities of daily living and maintaining social functioning, extreme difficulties in

maintaining concentration, persistence, or pace and four or more episodes of decompensation. (Tr. 261.)

In March, 2006, Ron Cohen, M.D. ("Cohen"), completed a form in which he stated he agreed with Kim's September 2004 opinion. (Tr. 264-65.) In February 2007, White completed a form in which he stated that Bonilla-Castro had a limitation of motion in his lumbar spine, and that his back pain interfered with his attention and concentration frequently. (Tr. 349.) White stated that Bonilla-Castro would be unable to perform routine, repetitive tasks at a consistent pace, detailed or complicated tasks and fast-paced tasks. (Tr. 349.) White opined that Bonilla-Castro could sit for thirty to forty-five minutes and stand/walk twenty minutes continuously. (Tr. 350.) He also opined that Bonilla-Castro could only sit about two hours and stand/walk less than two hours total during an eight-hour work day. (Tr. 350.) White opined that Bonilla-Castro could frequently lift ten pounds and occasionally lift up to twenty pounds. He stated that Bonilla-Castro could occasionally twist and stoop. (Tr. 351.)

In her Decision, the ALJ discussed the medical evidence, noted that Bonilla-Castro had back surgery in October 2004 and stated that follow-up notes demonstrate that Bonilla-Castro "continued to have an excellent postoperative recovery." (Tr. 18.) The ALJ noted that Bonilla-Castro was instructed to continue increasing his activities as tolerated and had a new weight restriction of 20 pounds. (Tr. 18.) The ALJ discussed the January, 2005 progress notes which referred Bonilla-Castro to physical therapy and reported that Bonilla-Castro had been increasing his activities and that he took a vacation to Puerto Rico over the holidays. (Tr. 18.)

- 13 -

The ALJ discussed that in June 2005, when Bonilla-Castro was seen for complaints of knee pain, the x-rays were normal. The ALJ further noted that in July 2005, the physical therapy notes demonstrated that Bonilla-Castro continued to progress towards his goals and was independent in his home exercise program. (Tr. 18.) The ALJ stated that Bonilla-Castro's "physical therapy notes from July 2005 shows the claimant reported being 70% improved." (Tr. 18 (citing Tr. 339).) The ALJ noted that in December 2006, White noted that Bonilla-Castro made an excellent recovery in regards to his low back pain although he developed a recurrence of his left lumbar radiculopathy. (Tr. 18 (citing Tr. 336).)

The ALJ stated that "[t]he claimant did not have much follow-up care for his back condition from May 2005 until December 2006. Electrodiagnostic testing in January 2007 showed no radiculopathy or neuropathy.[5]" (Tr. 20.) The ALJ addressed White's report of February 2007 (Tr. 348-51) and stated that it is "long after the claimant's date last insured and not entirely supported by the evidence as of the date last insured." (Tr. 20.)

The ALJ reviewed the medical evidence regarding Bonilla-Castro's mental limitations and discussed that in March 2005, Bonilla-Castro was prescribed medication for depression and received some counseling. (Tr. 18.) The ALJ noted that the treatment notes report Bonilla-Castro's improvement and that Bonilla-Castro, as of June 2005, was doing very well. (Tr. 18.) The ALJ further noted that treatment notes in May and November 2006, after Bonilla-Castro's

---

[5]Radiculopathy is a disorder of the spinal nerve roots. Neuropathy is a classic term for any disorder affecting any segment of the nervous system. In contemporary usage, it is a disease involving the cranial nerves or peripheral or autonomic nervous system. *Stedman's Medical Dictionary* 1622 and 1313 (28th ed. 2006).

- 14 -

last insured date, stated that Bonilla-Castro's condition had improved. (Tr. 18 (citing Tr. 315-17).) Moreover, the ALJ discussed that the extensive mental limitations set forth in March 2006 (Tr. 259-262) "are beyond the claimant's date last insured and not supported by the evidence of record for the period up to the date last insured." (Tr. 20.)

The ALJ stated that after careful consideration of the entire record, as of the December 21, 2005, the date last insured, Bonilla-Castro had the residual functional capacity to perform unskilled, routine, simple work at the light exertional level allowing for alternating between sitting and standing and involving only occasional stooping, crouching, bending and twisting. (Tr. 19.) The ALJ also determined that when Bonilla-Castro's complaints and allegations are considered in light of the objective medical evidence, "they do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful employment." (Tr. 20.)

Bonilla-Castro raises several challenges to the ALJ's Decision. Bonilla-Castro first argues that the ALJ should not have rejected Centena's March 14, 2006 assessment. The March 14, 2006 assessment, was after Bonilla-Castro's insured status had expired and the ALJ did "not see a basis for relating [Centena's] limitations designated in the opinion forms completed long after the date last insured to the period up to the date last insured." (Tr. 20.) Bonilla-Castro contends that Centena's assessment was completed ten weeks after the date last insured which is "hardly" long after the date last insured and stated that Bonilla-Castro was "symptomatic" as of March 2, 2005. (Pl's Br. 9 (citing Tr. 330).) The ALJ, however, concluded that Centena's limitations were not supported by the evidence of record which demonstrated that Bonilla-

Castro's mental impairments moderately limited his daily and social functioning and concentration, persistence and pace. (Tr. 20.)

During the first six months of treatment, Centena noted that Bonilla-Castro made steady improvement with medications and was doing "very well." (Tr. 228-31, 320-22.) The ALJ reasonably concluded that as of December 31, 2005, Bonilla-Castro's mental limitations were not as severe as Centena indicated in his March 2006 opinion. Moreover, the state agency psychologists determined that Bonilla-Castro retained the capacity for unskilled work with normal supervision as found in the ALJ's determination of Bonilla-Castro's residual functional capacity. Furthermore, the ALJ noted that Centena's progress notes in 2006 documented Bonilla-Castro's "significant improvement." (Tr. 315-17.) The ALJ reasonably concluded that Centena's March 2006 report was not supported by the evidence, which includes Centena's progress notes which contradict his March 2006 report, as well as being beyond the date of last insured.

Bonilla-Castro further argues that the ALJ erred in not accepting Kim's September 2004 assessment and Cohen's March 2006 concurrence with Kim's assessment. As discussed in the ALJ's decision and supported by the medical record, Bonilla-Castro experienced a good recovery after his fusion surgery in October 2004. (Tr. 200-5.) The clinical examination findings do not support the conclusion that Bonilla-Castro could not sit more than two hours or stand/walk for less than two hours during a work day. Bonilla-Castro repeatedly demonstrated full muscle strength, reflexes and sensory function in his lower extremities. (Tr. 200, 202, 204, 207.) The ALJ's decision is supported by substantial evidence.

Bonilla-Castro also argues that the ALJ ignored White's statement that Bonilla-Castro is "disabled" with surgery pending and Bestland's statement that Bonilla-Castro appeared to be "unable to seek employment." (Tr. 163-66.) This argument is without merit. The ALJ is not required to attach any significance to an opinion that a claimant is disabled or unable to work. *See* 20 C.F.R. § 404.1527(e) (the ALJ is not required to attach any significance to opinions on issues reserved to the Commissioner, such as whether a claimant is disabled). The medical evidence documented that Bonilla-Castro made a good recovery after the fusion surgery and retained the capacity to perform unskilled work with normal supervision. (Tr. 200–5, 242.)

The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). "Although a mere scintilla of proof will not suffice to uphold the ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 699 *citing Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

In sum, the ALJ adequately articulated her reasons for finding that Bonilla-Castro retained the residual functional capacity to perform light exertional work. The Court concludes that there is substantial evidence in the record provided by the state agency physicians as well

- 17 -

Case 2:07-cv-00821-RTR   Filed 09/09/08   Page 17 of 20   Document 16

as Bonilla-Castro's treating physicians to support the ALJ's conclusions regarding Bonilla-Castro's residual functional capacity.

**2. Whether Substantial Evidence Supports the ALJ's Step-Five Finding.**

At step five of the sequential evaluation, the ALJ considered Bonilla-Castro's residual functional capacity in combination with his age, education and past relevant work experience and concluded that Bonilla-Castro could perform a significant number of jobs. The ALJ determined that Bonilla-Castro was limited to light work which means that Bonilla-Castro cannot lift more than twenty pounds at a time but can frequently lift up to ten pounds. See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.") Furthermore, the ALJ limited Bonilla-Castro to simple, routine unskilled work which adequately accommodates Bonilla-Castro's mental limitations to simple, routine, unskilled work.

At the February 1, 2007 hearing, the vocational expert was asked by the ALJ to consider a hypothetical individual of Bonilla-Castro's age and work history, who had a G.E.D., and was limited to light exertional level work, occasional climbing, stooping, kneeling, crawling, balancing and crouching. (Tr. 373.) This individual was further limited to routine, repetitive, simple, non-complex work; alternate sitting and standing as needed; and occasional bending and twisting. (Tr. 373-4.) The vocational expert testified that such an individual could perform unskilled assembly positions (2,105 light positions and 373 sedentary positions); unskilled production positions (13,140 light and 2,101 sedentary); unskilled light inspector positions (3,732 ); and unskilled sedentary general laborer positions (1,118). (Tr. 374-5.)

Bonilla-Castro argues that the ALJ should have included additional nonexertional limitations to account for Bonilla-Castro's mental impairments. The ALJ, however, did not find those limitations credible and, therefore, is not required to include those limitations in a hypothetical question. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002); *Meredith v. Brown*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question be supported by the medical evidence in the record."). The ALJ properly determined that the extensive mental limitations outlined in Centena's assessment were not supported by the evidence. The state agency psychologists opined that Bonilla-Castro retained the capacity to perform unskilled work with normal supervision. (Tr. 242.)

Bonilla-Castro challenges the ALJ's finding regarding residual functional capacity because the ALJ did not conduct a "function by function" analysis of his limitations as required by Social Security Ruling ("SSR") 96-8p before she expressed what Bonilla-Castro could do in terms of a residual functional capacity finding. (Pl's Br. 12.) SSR 96-8p does not require a function-by-function articulation requirement. The plain language of SSR 96-8p requires the adjudicator to "consider, not articulate" Bonilla-Castro's residual functional capacity in a function-by-function basis. *See Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007).

In this case, the vocational expert testifed that an individual of Bonilla-Castro's age, educational background and residual functional capacity could perform more than 22,000 jobs in the State of Wisconsin. (Tr. 373-74.) The ALJ's hypothetical question included the credible limitations found by the ALJ which were supported by the medical evidence. This Court concludes that substantial evidence supports the ALJ's step-five finding.

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated her reasons for denying Bonilla-Castro's claim for disability benefits. Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that Bonilla-Castro was not disabled and was not entitled to disability benefits. Therefore, Bonilla-Castro's appeal is denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Bonilla-Castro's appeal from the Commissioner's final decision denying his July 8, 2004 application for disability insurance benefits is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of September, 2008.

**BY THE COURT:**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**